UNITED STATES v. METCALF et al.

(District Court, D. Rhode Island. April 2, 1919.)

Nos. 50, 81, 82.

1. PARDON ⬦⟼11—GENERAL AMNESTY—CONSTRUCTION.

In the proclamation of the President of June 14, 1917, reciting the decision of the Supreme Court holding illegal the suspension of enforcement or imposition of sentences by federal judges, and pardoning persons under suspended sentences and those who had been convicted prior to a fixed date, but not sentenced at the date of the proclamation, the pardon to those not yet sentenced was limited to cases where the imposition of sentence had been illegally suspended by the judge, and did not apply where it was suspended to give defendant time to perfect his bill of exceptions, which was delayed by the illness and death of his counsel.

2. CRIMINAL LAW ⬦⟼974(1)—DEMURRER—OPENING THE RECORD.

A demurrer to the government's replication to a plea in arrest of judgment opens the whole record, and the plea, if insufficient, can be overruled.

Edward P. Metcalf and Henry E. De Kay were convicted of misapplication of funds of a national bank. On demurrer to replication to the plea of Henry E. De Kay in arrest of judgment. Demurrer and plea in arrest of judgment overruled.

Harvey A. Baker, U. S. Atty., of Providence, R. I., and George H. Huddy, Jr., Sp. Asst. Atty. Gen. (John W. Baker, of Providence, R. I., on the brief), for the United States.

James W. Osborne, of New York City, and Lee, Boss & McCanna, of Providence, R. I., for defendants.

BROWN, District Judge. The question arising upon this demurrer is whether the defendant, Henry E. De Kay, against whom a verdict of guilty was rendered prior to June 15, 1916, and upon whom no sentence has been imposed, is entitled to arrest of judgment upon his plea of full amnesty and pardon by public proclamation of the President of the United States, dated June 14, 1917, wherein De Kay claims the benefit of said proclamation and accepts the amnesty and pardon thereby declared and granted.

To this plea the United States has filed a replication setting forth the various proceedings in said case after verdict, stating that no motion for sentence has been made by or on behalf of the United States, and that the court has not in any wise suspended sentence or the imposition of sentence upon said defendant, and that said cause has actually been in course of adjudication since the rendition of the verdict of guilty.

From this replication, and from our record, it appears that the delay in imposing sentence was due in part to the defendant's petition for a new trial and to proceedings thereon resulting in its denial, and in part to delays in settling the defendant's voluminous bill of exceptions relating to a long and complicated trial, during the period between November 23, 1914, and January 23, 1915, upon a charge of misapplication of funds of a national bank. In consequence of the serious illness of defendant's counsel, Walter H. Barney, Esq., the

⬦⟼For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

case was by order duly continued from term to term; and as this illness finally resulted in death, the defendant unfortunately was deprived of his services in perfecting the bill of exceptions and assignments of error, and in the prosecution of a writ of error thereon.

It has long been the practice in this district and circuit to defer sentence until after the settling of the bill of exceptions, in order that the record, which is to be re-examined upon writ of error, may be perfected before judgment thereon.

It clearly appears that the deferring of sentence was only to enable the defendant to move for a new trial and to perfect proceedings upon writ of error. This was all at the defendant's request, and in order to obtain legal relief against the sentence, which, in ordinary course, and but for these proceedings for a new trial and for writ of error, would have followed in pursuance of the statute under which he was tried. All of these proceedings would have been idle, but for the defendant's knowledge that sentence was imminent, and would ultimately follow, unless he could set aside the verdict.

The defendant was still held to bail to answer any judgment that should be pronounced against him. Sentence was not deferred upon "considerations extraneous to the legality of the conviction or the duty to enforce the sentence" (Ex parte United States, 242 U. S. 37, 37 Sup. Ct. 74, 61 L. Ed. 129, L. R. A. 1917E, 1178, Ann. Cas. 1917B, 355), but only to enable legal proceedings, pending or contemplated, to be taken for relief against sentence upon the verdict.

After the decision of the Supreme Court in Ex parte United States, 242 U. S. 27, 37 Sup. Ct. 72, 61 L. Ed. 129, L. R. A. 1917E, 1178, Ann. Cas. 1917B, 355, relating to the power of a court to suspend sentence, the President, on June 14, 1917, issued a proclamation in the following terms:

"By the President of the United States of America.

"A Proclamation.

"Whereas, a practice has existed for many years among the judges of certain United States courts of suspending either the imposition or the execution of sentences whenever, in their judgment, the circumstances warranted it, which practice is illegal, as has been held by the Supreme Court of the United States in a case entitled 'Ex parte United States, Petitioner,' known as the Killits Case, decided December 4, 1916; and

"Whereas, the practice was widespread, and many thousands of persons are now at liberty under such suspensions, never having served any portion of the sentences duly authorized and required by the statutes; and

"Whereas, many of these persons are leading blameless lives and have re-established themselves in the confidence of their fellow citizens, and it is believed that the enforcement of the law at this late date would, in most instances, be productive of no good results; and

"Whereas, the Supreme Court of the United States, in recognition of the necessity for meeting this situation, has stayed the mandate in the Killits Case until the end of the present term, to wit, until about June 15, 1917:

"Now, therefore, be it known that I, Woodrow Wilson, President of the United States of America, in consideration of the premises, divers other good and sufficient reasons me thereunto moving, do hereby declare and grant a full amnesty and pardon to all persons under suspended sentences of United States courts liable to penalties as aforesaid, where the sentences imposed were less than the period between the date of imposition and June 15, 1917, and to all persons, defendants in said courts, in cases where pleas of guilty

were entered or verdicts of guilty returned prior to June 15, 1916, and in which no sentences have been imposed.

"In all other cases of suspension, either of the imposition or the execution of sentence by judges of the United States courts occurring prior to December 4, 1916, the date of the decision in the Killits Case, a respite of six months is hereby granted from June 15, 1917, in order that the facts and merits of the respective cases may be investigated and considered and appropriate action taken, where warranted, by way of executive clemency.

"In testimony whereof I have hereunto signed by name and caused the seal of the United States to be affixed.

"Done in the District of Columbia this fourteenth day of June in the year of our Lord one thousand nine hundred and seventeen, and of the independence of the United States the one hundred and forty-first.

"[Seal.]                                                                    Woodrow Wilson.
"By the President:
        "Robert Lansing, Secretary of State."

[1] The defendant De Kay comes within the literal meaning of the following clause of the proclamation:

"And to all persons, defendants in said courts, in cases where pleas of guilty were entered or verdicts of guilty returned prior to June 15, 1916, and in which no sentences have been imposed."

It is the contention of the United States that this language, though broad enough to include the defendant, must be limited to cases in which the failure to impose sentence has been due to illegal action by a judge, such as was condemned by the decision of the Supreme Court, and has no application to cases where the delay was due to legal proceedings for revision. The United States relies upon the preamble to show the situation which led to the proclamation, and upon the statement in the granting clause "in consideration of the premises."

For the defendant De Kay it is urged that the granting clause contains also the words "divers other good and sufficient reasons me thereunto moving"; that the language is unambiguous, and therefore resort to the preamble is not permissible in aid of its interpretation. It is further urged that the prior clause, relating to persons under suspended sentences for terms less than the period between the date of imposition and January 15, 1917, is applicable equally to cases of illegal and of legal suspension, and that, if in said clause there is no discrimination between sentences legally and illegally suspended, there is no reason for making such discrimination between legal and illegal postponement of sentence; that it is reasonable to suppose and must be assumed that the President and the Attorney General had knowledge of the usual course of legal procedure, and that in so important a matter it cannot be presumed that language so comprehensive in character was used inadvertently or inadvisedly.

It is further urged that it cannot be supposed that, in dealing with cases of suspension or delay either of the imposition or the execution of sentences, it was intended to prefer as objects of amnesty those persons who had benefited by illegal action of the court to those who had not benefited by illegal action, but only by delay to which they were legally entitled. This latter argument, however, ignores one important consideration. Those persons who h: been deemed by

the judges who tried them entitled to clemency, and who, in a mistaken exercise of discretion, had been relieved from penalties of the law, were presumably persons regarded as worthy of clemency. The suggestion by the Supreme Court of "a grave situation," only to be remedied by the exercise of the pardoning power, or by probation legislation enlarging judicial discretion, was in behalf of a class of persons presumably having special claims to further clemency, since already they had been so regarded by judges familiar with their cases.

If we adopt the construction for which the United States contends, the pardon is applicable only to those persons who have had their sentences delayed either in imposition or execution by illegal action of judges. It follows, therefore, that in each plea of pardon and amnesty it would be insufficient to show that a defendant was within the literal terms of the grant; but it would seem necessary for the defendant to allege and to show that his sentence had been illegally suspended by the judge, or that the judge had illegally refused to impose sentence. In other words, the plea in arrest of judgment, in addition to the facts that verdict of guilty was returned prior to June 15, 1916, and that no sentence had been imposed prior to the date of the pardon, should affirmatively show illegal action by the judge.

The question whether inaction by a judge, or a refusal by a judge to sentence upon motion of a United States attorney, was legal or illegal, might involve a question of great difficulty, since the record on such a motion may afford slight evidence, if any, to assist in determining whether the inaction or action of the judge was within or in excess of a sound judicial discretion.

"The courts inherently possess ample right to exercise reasonable—that is, judicial—discretion to enable them to wisely exert their authority." 242 U. S. 41, 42, 37 Sup. Ct. 72, 74 (61 L. Ed. 129, L. R. A. 1917E, 1178, Ann. Cas. 1917B, 355).

There is judicial discretion to temporarily suspend either the imposition of sentence or its execution, to the end that a pardon may be procured or that a violation of law in other respects may be prevented. The judge may lawfully delay sentence to enable him to better satisfy his own mind what the punishment ought to be, or to give opportunity to a defendant to procure evidence affecting the determination of the length of sentence.

There is no indication in the proclamation of any intention to submit to any one the determination of the question whether or not the suspension, either of imposition or of execution, was legal or illegal, and it must be confessed that there are manifest inconveniences and uncertainties arising from that construction for which the United States contends. These would be obviated by reading the granting clause of pardon according to its terms. There would then be included the entire class of persons who were doubtless intended, and perhaps others in whose cases there had been similar delay, but who were leading blameless lives and had established themselves in the confidence of their fellow citizens. To such persons might well apply the words:

"And it is believed that the enforcement of the law at this late date would, in most instances, be productive of no good results."

What comparative weight was given to the staleness of the cases, and to presumptions therefrom, whether delays due to other causes, possibly inaction by the prosecution, or illness or inability of defendants to appear, or actual knowledge of the number and character of pending cases were included in the "divers other good and sufficient reasons me thereunto moving," are matters of speculation upon which we cannot enter.

A proclamation of general amnesty involves abolition and forgetfulness of the offenses, and for the benefit of a class disregards refined distinctions between offenders. It cannot be said, therefore, that the claim of the defendant to a literal interpretation of the proclamation is altogether unreasonable.

We must inquire, however, whether the literal meaning of the clause is consistent with other clauses, and whether, when read alone, it transcends the manifest intent of the proclamation.

The situation which led to the proclamation is well known, and appears from the preamble of the proclamation and from a reading of the decision of the Supreme Court referred to therein. Through the exercise of clemency by judges in a mistaken, but humanitarian, view of the scope of their discretionary powers, there was presented "a grave situation" calling for remedy by the exercise of legislative or executive power in behalf of a defined class of persons, but a class which, according to the opinion of the Supreme Court, did not include persons in the situation of the defendant. If he has been included, it is because of an intention of the President to enlarge that class. The preamble of the proclamation shows clearly that the grant of pardon was made in consequence of the decision and suggestions of the Supreme Court. The granting clause deals first with a class of persons upon whom sentences had been imposed, and grants amnesty and pardon "to all persons under suspended sentences of United States courts liable to penalties as aforesaid." The reference "as aforesaid" is to the preamble, and indicates that this clause must be read therewith.

The clause whose interpretation is in question follows, and deals with cases in which no sentences have been imposed. This completes the paragraph granting amnesty.

Then follows a clause granting a respite of six months from June 15, 1917, for investigation and appropriate action, when warranted, by way of executive clemency, which uses what seems significant language:

"In all other cases of suspension either of the imposition or the execution of sentence by judges of the United States Courts occurring prior to December 4, 1916, the date of the decision in the Killits Case," etc.

As all other clauses relate to suspension by action of judges, it seems to be inconsistent therewith to read the clause "and in which no sentences have been imposed" to cover cases in which, according to the established practice of the courts, the time has not yet arrived for judgment on the verdict. In such cases the mere extension of time

for petitioning for a new trial, or for perfecting exceptions, is obviously not what is meant by the term "suspension" as used in the proclamation. Such postponement by the assertion of a defendant's rights of review affords no evidence that he was regarded by the judge as entitled, by personal merit or by the peculiar circumstances of his case, to judicial clemency, and seems to afford no reason for that executive clemency for which the Supreme Court afforded an opportunity by stay of the mandate, and which was granted by the President.

Subsequent to the filing of the defendant's plea of pardon a second proclamation was made, dated August 21, 1917, purporting to specifically define the persons to whom amnesty and pardon were extended by the prior proclamation of June 14, 1917. As the plea in arrest of judgment had been filed before the date of the second proclamation, it is doubtful if his rights can thereby be affected. Questions of construction arise upon the second proclamation, which do not arise upon the first, and which, for the disposition of the demurrer, it seems unnecessary to consider.

I am of the opinion that the facts set forth in the replication, and which appear of record, show that the defendant is not within the President's proclamation pleaded in arrest of judgment.

[2] As the demurrer to the replication opens up the whole record, the plea in arrest of judgment must also be adjudged insufficient.

Demurrer to replication overruled.

Defendant's plea in arrest of judgment overruled.